# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-218

STEVEN BALDWIN, individually;

    Plaintiff;

v.

COLORADO STATE UNIVERSITY SYSTEM;
COLORADO STATE UNIVERSITY, a subdivision of COLORADO STATE UNIVERSITY SYSTEM;
AUDREY SHILLINGTON, in her official capacity as Director and Professor at the School of Social Work at Colorado State University;
TONY FRANK, in his official capacity as President and Chancellor of Colorado State University;

    Defendants.

---

## COMPLAINT WITH JURY DEMAND
---

Plaintiff, Steven Baldwin ("Baldwin"), who appears individually, hereby respectfully files this action against Defendants Colorado State University ("CSU"), Audrey Shillington ("Shillington) and Tony Frank ("Frank"), through the undersigned counsel of record, Igor Raykin of Kishinevsky & Raykin, Attorneys and Counselors at Law, and states on information and belief as follows.

## I.  NATURE OF THE CASE

This action seeks redress under state and federal law for a Plaintiff who is a decorated combat veteran.  Plaintiff was deprived through the Defendants' wrongful actions of a Ph.D. in social work, which he was pursuing as his calling to assist his fellow veterans in dealing with the often devastating consequences of military service.

## II.  JURISDICTION AND VENUE

1. Plaintiff Steven Baldwin (herein "Mr. Baldwin") is a resident of Fort Collins, Colorado.

2. Defendant Colorado State University (herein "CSU" or "university") is a public university located in Fort Collins, Colorado.

3. Based on information and belief, all of the individual Defendants are Colorado residents.

4. The wrongful acts alleged by the Plaintiff occurred in whole or in part in Larimer County.

5. The court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367.

6. Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b) because the wrongful conduct alleged herein occurred in this state.

## III.  BACKGROUND FACTS

7. Mr. Baldwin is a decorated combat veteran of the U.S. Army.  He began active duty in 1996 and was honorably discharged in 1997.  He also served additional duty beginning in 2003 and was honorably discharged in 2005.

2

8. As a result of his service, Mr. Baldwin has suffered various disabilities. These disabilities include but are not limited to chronic fatigue syndrome, left knee patellofemoral syndrome, right knee patellofemoral syndrome, headaches associated with PTSD with associate depression to include traumatic brain injury, PTSD with associated depression to include traumatic brain injury, thoracolumbar spine, bipolar or additional Axis II personality disorders, irritable bowel syndrome and tinnitus.

9. Mr. Baldwin began attending CSU in the Fall of 2014 and was enrolled in the university's Ph.D social work program.

10. CSU has been aware of Mr. Baldwin's disabilities since he applied for the social work program. Included in his application was decision dated April 20, 2013, from the Department of Veterans Affairs addressing his "chronic fatigue as secondary to the service-connected disability of posttraumatic stress disorder with associated depression to include traumatic brain injury" and "bipolar or additional Axis II personality disorders", among other medical issues.

11. On or about June 24, 2016, there was an off-campus incident wherein Mr. Baldwin defended himself from a violent physical attack by another student. In August of 2016, Mr. Baldwin was criminally charged in relation to this incident. However, this charge was later dismissed by the District Attorney, because the evidence demonstrated that Mr. Baldwin was actually the victim of an unprovoked assault for which he was only defending himself.

12. Melissa Emerson at CSU's Conflict Resolution and Student Conduct Services sent Mr. Baldwin a notice, dated August 2, 2016, informing him that she had received a report from CSU's Office of Support and Safety Assessment describing Mr. Baldwin's involvement in the June 24, 2016, incident. Ms. Emerson stated that it appeared that Mr. Baldwin may have violated the following provisions of CSU's Student Code of Conduct:

- 4 – Disruption or obstruction of administration or disciplinary proceedings, or participation in an activity that disrupts normal University activities, and/or threatens property or bodily harm or intentionally interferes with the right of access to University facilities or freedom of movement of any person on campus.
- 6 – Physical abuse.
- 6 – Verbal abuse.
- 6 – Threats.
- 6 – Intimidation.
- 15 – Evidence of violation or conviction of any federal or state law or local ordinance.

Ms. Emerson notified Mr. Baldwin that his disciplinary hearing had been scheduled for August 5, 2016.

13. Mr. Baldwin attended the August 5, 2016, disciplinary hearing, and explained that he was the victim of a violent and unprovoked attack by the purported victim, which was later confirmed by the District Attorney when it dismissed the charges against Mr. Baldwin.

14. CSU subsequently suspended Mr. Baldwin from the Ph.D. social work program on or around August 18, 2016.

15. On August 20, 2016, Mr. Baldwin appealed his suspension from CSU. In his appeal, Mr. Baldwin explained that he had "been diagnosed with PTSD at a 100% disability rating from the Department of Veterans Affairs and live with the effects of TBI traumatic brain injury since my honorable discharge from active duty in 2005." His official medical diagnosis and files from the Veterans Administration, as well as character witnesses, achievements, CV and letters of recommendation were included with the appeal. Mr. Baldwin also explained in his appeal letter that when he was attacked by the other student, his "fight or flight responses kicked in and I felt at that moment I was fighting for my life and in imminent danger."

16. Mr. Baldwin subsequently received a letter from CSU, dated August 24, 2016, granting him an appeal.

17. In a letter dated January 25, 2017, the CSU School of Social Work refused to readmit Mr. Baldwin into his Ph.D. program.  In its letter denying readmission, CSU made no mention of Mr. Baldwin's disabilities or any proposal to accommodate his disability-related needs.

18. Mr. Baldwin subsequently provided CSU with a letter dated March 30, 2017, from his criminal defense attorney stating "The charges should never have been filed against Mr. Baldwin and this is evident in the fact that the District Attorney dismissed that case against Mr. Baldwin.  In other words, all charges against Mr. Baldwin were dropped."  Included with this letter was proof that the case against Mr. Baldwin was dismissed.

19. Mr. Baldwin also sought accommodations from CSU in March of 2017, including readmission into the program.

20. In a letter from CSU dated March 20, 2017, CSU acknowledged that Mr. Baldwin was entitled to receive accommodations based on his disabilities.  However, since CSU still refused to readmit Mr. Baldwin these accommodations were meaningless.

21. Despite acknowledging Mr. Baldwin's disabilities and receiving proof that the charges were dismissed, CSU refused to readmit Mr. Baldwin.
Therefore, even though the only material evidence supporting Mr. Baldwin's suspension—the criminal charges—was later proven to be of zero probative value and wholly irrelevant to any violation of school policies cited by CSU to support its disciplinary action, it continued to reaffirm that flawed and unsupported action.

### IV.  CLAIMS AND CAUSES OF ACTION – AGAINST ALL DEFENDANTS
#### A.     FIRST CLAIM FOR RELIEF
*(SECTION 1983 FOR VIOLATION OF CONSTITUTIONAL RIGHTS)*

22. Plaintiff reincorporates and realleges all other paragraphs as if fully set forth herein.

23. 42 U.S.C. § 1983 provides that: "Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress. . ."

24. Plaintiff is a citizen of the United States and Defendants are persons for the purposes of 42 U.S.C. § 1983.

25. At all relevant times Defendants were acting under the color of state law in their capacity as employees at a public university.

26. As the alleged conduct occurred during school hours, Defendants' acts were conducted within the scope of their employment.

27. The Equal Protection Clause requires states to treat an individual in the same manner as others in similar conditions and circumstances.

28. Plaintiff had a significant property interest in continuing his education at CSU, which entitled him to Due Process prior to his dismissal.

29. The Equal Protection Clause requires states to treat an individual in the same manner as others in similar conditions and circumstances.

30. As a state actor, CSU is subject to Constitutional requirements under the Fourteenth Amendment to the U.S. Constitution, governing any deprivation of a life, liberty, or property interest, and must provide adequate procedural safeguards before any such deprivation occurs.

31. CSU removed Mr. Baldwin completely from the Ph.D. program and has refused to readmit him, and has therefore engaged in a complete and permanent deprivation of his property interest in continuing his education at a public university.

32. The procedural protections require, at a minimum, fair notice, an opportunity to be heard, and procedures necessary to "avoid unfair or mistaken findings of misconduct and arbitrary exclusions from school." *Goss v. Lopez*, 419 U.S. 565, 581 (1975).

33. Those procedural protections apply not only to the initial deprivation of a protected life, liberty, or property interest, but also to any appeals or allowed requests for reinstatement of those interests.

34. In removing Mr. Baldwin based upon mere unsupported criminal charges, then refusing to readmit him even after those criminal charges were dismissed, CSU engaged in a procedural Due Process violation, in addition to violation of Equal Protection.

35. As a direct and proximate result of Defendants' conduct, Plaintiff was deprived of his Constitutional rights and suffered other damages including severe emotional distress entitling him to compensatory and special damages, in amounts to be determined at trial.

36. Plaintiff is entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1983, pre-judgment interest, and costs as allowable by federal law.

37. Plaintiff is also entitled to punitive damages against Defendants pursuant to 42 U.S.C. § 1983 as Defendants acted maliciously, willfully, or with a reckless and wanton disregard for Plaintiff's Constitutional rights.

## B. SECOND CLAIM FOR RELIEF
### (*VIOLATION OF SECTION 504 OF THE REHABILITATION ACT*)

38. Plaintiff reincorporates and realleges all other paragraphs as if fully set forth herein.

39. Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794, and its implementing regulations apply to recipients of federal financial assistance from the Department of Education.  *See* 34 C.F.R. § 104.2.  CSU receives such federal financial assistance and is thus subject to Section 504.

40. Among other things, Section 504 requires that:

    > A recipient may not, directly or through contractual or other arrangements, utilize criteria or methods of administration (i) that have the effect of subjecting qualified handicapped persons to discrimination on the basis of handicap, (ii) that have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the recipient's program with respect to handicapped persons, or (iii) that perpetuate the discrimination of another recipient if both recipients are subject to common administrative control or are agencies of the same states. C.F.R. § 104.4(b)(4).

41. With regards to postsecondary educational entities, 34 C.F.R. § 104.43 prohibits universities receiving federal funds from excluding, discriminating against, or otherwise denying benefits to qualified students on the basis of their handicap.

42. Moreover, any such university must "make such modifications to its academic requirements as are necessary to ensure that such requirements do not discriminate or have the effect of discriminating, on the basis of handicap, against a qualified handicapped applicant or student." 34 C.F.R. § 104.44(a).

43. Education institutions have a "real obligation… to seek suitable means of reasonably accommodating a handicapped person *and to submit a factual record indicating that it conscientiously carried out this obligation.*" *Wong v. Regents of the Univ. of California*, 192 F.3d 807, 817 (1999) (quoting *Zukle v. Regents of the Univ. of California*, 166 F.3d 1041, 1048 (9th Cir. 1999) and *Wynne v. Tufts Univ. Sch. of Med.,* 932 F.2d 19, 25–26 (1st Cir. 1991) (en banc)).

44. Plaintiff was and is qualified to attend CSU.

45. Despite notice of Plaintiff's qualifying handicap, CSU intentionally excluded Plaintiff, intentionally discriminated against him, was deliberately indifferent to his rights, and intentionally denied him benefits solely on the basis of his disability when CSU excluded him in the first place and then subsequently failed to readmit him.

46. CSU also failed to carry out its obligation to undertake a conscientious, fact-specific investigation of what would constitute a reasonable accommodation, and failed to provide Plaintiff with a reasonable accommodation.

47. Defendant CSU's violation of Plaintiff's rights under Section 504 caused Plaintiff to suffer damages, including but not limited to psychological, emotional, and reputational damages in addition to economic damages and the loss of educational and career opportunities, as well as attorney's fees incurred in this action.

### C.  THIRD CLAIM FOR RELIEF
### (*VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT*)

48. Plaintiff reincorporates and realleges all other paragraphs as if fully set forth herein.

49. Title II of the Americans with Disabilities Act ("Title II"), 42 U.S.C. § 12101, and its implementing regulations apply to public entities, such as CSU.

50. Title II bars public entities from discriminating against qualified individuals with a disability or, by reason of their disability, excluding them from participation in or denying them the benefits of the services, programs, or activities of the public entity.  42 U.S.C. § 12132.

51. Plaintiff's mental and physical conditions alleged herein constitute disabilities protected under Title II.

52. As explained above, Plaintiff was and is qualified to attend CSU.

53. Plaintiff was excluded from participation in or denied the benefits of CSU's services, programs, or activities.

54. That exclusion, denial of benefits, and discrimination was by reason of Plaintiff's disability.

CSU's violation of Plaintiff's rights under Title II caused him to suffer damages, including but not limited to psychological, emotional, and reputational damages in addition to economic damages and the loss of educational and career opportunities and attorneys' fees and costs in this action.

### D.   FOURTH CLAIM FOR RELIEF
### (*BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING  – SYSTEM AND SCHOOL*)

55. Plaintiff reincorporates and realleges all other paragraphs as if fully set forth herein.

56. Plaintiff's agreement with CSU to provide educational services in exchange for the payment of tuition monies qualifies as a contract, involving the mutual exchange of promises, mutual assent, and supporting consideration.

57. Thus, it is subject to the duty of good faith and fair dealing that is implied into every contract, under which a contracting party is prohibited from exercising its discretion in a manner that contradicts the other party's reasonable expectations thereunder or in a manner that deprives the other of their benefits under the contract.

58. CSU's actions in refusing to accommodate Plaintiff, in dismissing him from CSU, and in refusing to readmit him once the underlying criminal charges were dismissed breached the duty of good faith and fair dealing, causing him to suffer injuries, damages, and losses in an amount to be proven at trial.

### E.  FIFTH CLAIM FOR RELIEF
### (*VIOLATION OF THE COLORADO ANTI-DISCRIMINATION ACT*)

59. Plaintiff reincorporates and realleges all other paragraphs as if fully set forth herein.

60. The Colorado Anti-Discrimination Act ("CADA") prohibits discrimination on the basis of disability in places of public accommodation.  *See*  C.R.S.A. § 24-34-601 et. seq.

61. Under C.R.S.A. § 24-34-601(1), a "place of public accommodation" specifically includes "an educational institution".

62. Prohibited discrimination under C.R.S.A. § 24-34-601(2)(a) includes directly or indirectly refusing, withholding from, or denying an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations on the basis of their disability.

63. CSU violated CADA through its wrongful actions alleged herein.

64. CSU's violations of Plaintiff's rights under CADA caused Plaintiff to suffer damages, including but not limited to psychological, emotional, and reputational damages in addition to economic damages and the loss of educational and career opportunities and attorney fees and costs in this action.

### F. SIXTH CLAIM FOR RELIEF
*(BREACH OF CONTRACT)*

65. Plaintiff reincorporates and realleges all other paragraphs as if fully set forth herein.

66. Plaintiff's agreement with CSU to provide educational services in exchange for the payment of tuition monies qualifies as a contract, involving the mutual exchange of promises, mutual assent, and supporting consideration.

67. Part of that contract was CSU's promise to comply with its legal obligations not to discriminate against Plaintiff and to accommodate Plaintiff's disabilities.

68. Yet, in dismissing him from CSU, and in refusing to readmit him once the underlying criminal charges were dismissed breached, and in failing to accommodate his disabilities, which actions were unlawful, constitute a breach of that contract and caused him to suffer injuries, damages, and losses in an amount to be proven at trial.

### G. SEVENTH CLAIM FOR RELIEF
*(INTENTIONAL INTERFERENCE WITH CONTRACTUAL OBLIGATIONS)*

69. Plaintiff reincorporates and realleges all other paragraphs as if fully set forth herein.

70. Plaintiff obtained student loans totaling approximately $115,000.00 in order to finance his education with CSU.

71. Plaintiff therefore has an existing contract with a third party, the lender, to repay student loans with interest, over time, that were to be repaid by Plaintiff once he was gainfully employed in his chosen field through his education at CSU.

72. CSU knew or reasonably should have known of that contract because information was provided to it as part of the payment process indicating the existence of the loan, and in other regards orally and/or in writing from the Plaintiff.

73. CSU, by words or conduct, or both, intentionally caused Plaintiff to be unable to perform his contact with the lender.  More specifically, by discriminating against him, by failing to accommodate his disability, and by both expelling him and refusing to readmit him based on dismissed criminal charges, Plaintiff was unable to complete his education, become gainfully employed, and then have the financial wherewithal to repay his loan.

74. CSU's interference was both intentional and wrongful, because that interference was illegal and violated Plaintiff's rights as alleged more specifically herein.

75. CSU's interference caused Plaintiff to suffer injuries, damages, and losses in an amount to be proven at trial.

## H.  EIGHTH CLAIM FOR RELIEF
### *(ABUSE OF PROCESS)*

76. Plaintiff reincorporates and realleges all other paragraphs as if fully set forth herein.

77. CSU intentionally caused Plaintiff to be removed from its educational programs through a disciplinary proceeding, and then refused to readmit him through a separate process after the criminal charges against him were dismissed.

78. The principal reason for CSU's action was other than to discipline Plaintiff for a legitimate violation of CSU's rules and policies, but instead to retaliate against him and then refuse to readmit him even after the justification for the disciplinary action had been removed.

79. CSU's actions caused Plaintiff to suffer injuries, damages, and losses in an amount to be proven at trial.

## I.  NINTH CLAIM FOR RELIEF
## (DECLARATORY AND INJUNCTIVE RELIEF)

80. Plaintiff realleges all other paragraphs as if fully set forth herein.

81. This is a civil rights suit in part requesting declaratory relief and injunctive relief pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201-2202 brought by Plaintiff to enjoin enforcement of the discriminatory conduct alleged above.

82. WHEREFORE, Plaintiff requests declaratory judgment enter in his favor and against the Defendants that: Defendants' rules, regulation, policy, and procedures are unconstitutional and void; and Defendants have under color of law and deprived him of his rights, privileges, and immunities as guaranteed by the Constitution and Laws of the United States.

83. Plaintiff further requests that the Court: (1) issue a temporary restraining order and a preliminary injunction pursuant to F.R.C.P. 65, ordering Defendants, their officers, agents, employees, successors, attorneys, and all those in active concert or participation with them to refrain immediately and pending the final hearing and determination of this action from discriminatory conduct; (2) issue a permanent injunction perpetually enjoining and restraining Defendants, their officers, agents, employees, successors, attorneys, and all those in active concert or participation with them, of the conduct complained; (3) award to Plaintiff costs and disbursements, as well as reasonable attorney's fees; and (4) award

Plaintiff such other and further relief as this Court may deem proper, including but not limited to requiring Defendants to effect proper training to prevent the recurrence of such conduct in their hiring, firing, training and educational policies and procedures.

84. WHEREFORE, Plaintiff requests that judgment enter in his favor and against the Defendants jointly and severally, in an amount to be determined by a judge or jury and that the Court also award the Plaintiff his legal fees and costs incurred in pursuing this action.

## V.  PRAYER FOR RELIEF

Plaintiff requests that the Court enter judgment in its favor and against the Defendants on each claim for relief, and award the following in addition to the relief sought and alleged in the individual claims:

85. Awarding the Plaintiff special damages for front lost wages, future wages, benefits, and out-of- pocket expenses in amounts to be established at trail;

86. Awarding the Plaintiff general damages for emotional distress in an amount to be established at trial;

87. Punitive damages, pursuant to 42 U.S.C. § 1981, 2000(e), in the maximum amount permitted by law;

88. Awarding the Plaintiff statutory and reasonable attorney fees, litigation expenses, and costs incurred in this action;

89. Awarding the Plaintiff prejudgment interest;

90. Awarding the Plaintiff any additional and further relief that the court finds equitable, appropriate, or just.

*PLAINTIFF REQUESTS A JURY ON ALL ISSUES SO TRIABLE*

s/ Tyler Jeffery
Tyler Jeffery, Esq.
Kishinevsky & Raykin, Attorneys at Law
2851 South Parker Road, Suite 150
Aurora, CO 80014
Telephone: (720) 588-2096
E-mail: tyler@coloradolawteam.com

s/ Igor Raykin
Igor Raykin, Esq.
Kishinevsky & Raykin, Attorneys at Law
2851 South Parker Road, Suite 150
Aurora, CO 80014
Telephone: (720) 767-1846
E-mail: igor@coloradolawteam.com

Attorneys for Plaintiff